UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARIA FARIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15CV00144 AGF |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Maria Faries was not disabled, and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., or supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further development of the record.

## BACKGROUND

Plaintiff, who was born on January 18, 1975, previously filed an application for disability insurance benefits on October 27, 2009. By decision dated August 10, 2011, an Administrative Law Judge ("ALJ") awarded a closed period of disability from May 25, 2007 (her last day of work), through April 30, 2009, due to surgery on her back (L4-5 and L5-S1 diskogram on June 11, 2007, lumbar myelogram on June 19, 2007, and L4-5 and

L5-S1 posterior lumbar interbody fusion on July 12, 2007), wrists (bilateral carpal tunnel release surgeries in January 2008, and reconstructive surgery for a broken left wrist in May and August 2008), and left shoulder (reduction internal fixation surgery on July 25, 2008). The ALJ found that beginning May 1, 2009, through the date of the decision, Plaintiff was able to perform substantial gainful activity. (Tr. 54-65.)

Plaintiff filed her current applications for benefits on April 5, 2012, alleging a disability onset date of February 6, 2009, due to surgery on her back, wrists, and left shoulder.[1] After Plaintiff's applications were denied at the initial administrative level, she requested a hearing before an ALJ. Such a hearing was held on December 5, 2013, at which Plaintiff and a vocational expert ("VE") testified. By decision dated March 13, 2014, the ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease of the lumbar spine with status post fusion, but that she had the residual functional capacity ("RFC") to perform the full range of sedentary work, and in light of her vocational factors (age, education, and work experience) was not disabled under the Commissioner's Medical-Vocational Guidelines ("Guidelines") found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2.[2] Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on June 11, 2015. Plaintiff has thus exhausted

---

1   Plaintiff also alleged that she suffered from headaches, and the record suggests that she experienced depression intermittently. But the only issues raised by Plaintiff in this action relate to the ALJ's assessment of Plaintiff's physical capacity, and so the Court will limit its discussion to matters relevant to Plaintiff's physical restrictions.

2   The Guidelines are fact-based generalizations about the availability of jobs for people of varying vocational factors, with differing degrees of exertional impairment.

2

all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the record does not support the finding that she can perform the full range of sedentary work, and more specifically, that the ALJ erred by failing to afford proper weight to the opinion of the consultative examiner, Chul Kim, M.D.

**<u>Plaintiff's Function Report</u>**

On her Function Report completed on June 1, 2012, in connection with her applications for disability benefits, Plaintiff stated that she did "pretty much nothing." She did not go anywhere, preferring to be home by herself and watch TV. She represented that with the help of her husband, she would care for "kids on weekends when we have" them, as well as for her dogs. She usually ate "anything quick, usually frozen," and cooked meals only about twice a month, again with the help of her husband. She had difficulty sleeping and some difficulty bathing. With respect to housework, she would "throw clothes in the washer/dryer," and if she did do any cleaning, it would take a long time as she had to sit down frequently. She did not renew her driver license when it expired in 2009, because she experienced too much anxiety when she drove. She did not shop, had no hobbies, did not engage in any social activities, and was "grouchy" because of her pain. (Tr. 194-203.)

**<u>Medical Record</u>**

Plaintiff presented to a family clinic on October 3, 2011, with low back pain. An MRI performed on November 10, 2011, showed mild scoliosis and no recurrent disc

herniations. Plaintiff returned to the clinic for left shoulder pain on November 17, 2011, at which time an x-ray of the left shoulder showed mild widening of the acromioclavicular joint space. (Tr. 234.) On December 22, 2011, and January 5, 2012, Plaintiff received cortisone injections on her left shoulder. (Tr. 234, 259.) On March 14, 2012, Plaintiff underwent a distal clavicle resection ("Mumford" procedure) of her left shoulder which she injured in a fall. (Tr. 253-54.)

The record includes treatment notes dating from April 5, 2012, from a pain clinic where Plaintiff was seen for management of pain primarily associated with her lumbar condition (degenerative intervertebral disc disorders). On April 5, 2012, she received a facet joint injection for diagnostic and pain relief purposes, and on April 26, 2012, she reported a 50% reduction in her low back pain. She reported pain in another spinal area, however, and her prescription for Zanaflex (a muscle relaxer), which had run out the previous week, was renewed. On September 28, 2012, her 15-day prescriptions for Gabapentin (used to treat nerve pain) and Hydrocodon (a narcotic pain medication) were renewed for 30 days. These prescriptions continued to be renewed on Plaintiff's periodic visits to the pain clinic and were among Plaintiff's medications on the date of the evidentiary hearing. In addition, she received nine lumbar epidural steroid injections during this period for pain, which Plaintiff reported was mild to moderate but sometimes severe, aggravated by physical activity, and relieved by changing positions, rest, and medications. (Tr. 269-316.) For example, a lumbar epidural was administered on September 25, 2013, approximately two and a half months before the hearing. The

4

physician's report stated that Plaintiff's pain failed to respond to three months of "conservative management" of patient education, physical therapy, and non-steroidal pain medication, and that test results were consistent with facet pain. (Tr. 314-16.) Medical notes during this time reported normal gait.

Meanwhile, an MRI of Plaintiff's lumbar, cervical, and thoracic spines on July 15, 2013, showed a mild disc bulge at L3-L4, and L5-S1, with possible impingement of the left L3 nerve root; minimal desiccation in the cervical spine; and a normal thoracic spine. An MRI of Plaintiff's neck on the same day showed minimal disc desiccation in the cervical spine.

**Evidentiary Hearing of December 5, 2013 (Tr. 26-49)**

Plaintiff testified that she lived with her spouse and 14-year old daughter. Plaintiff completed ninth grade, and later received her GED. She worked as an auto welder for approximately 10 years until 2009, when she quit. Prior to that, Plaintiff worked as a packer in a meat packing facility and as a "set-up operator" at a tool company. Plaintiff testified that her back surgery was "not a success." She testified that she could lift about 10 pounds, and could "sit longer than [she] could stand," which she could do for only about 15 or 20 minutes before it became too painful. She was taking pain medications but still experienced pain. She also reported that her legs gave out once or twice every two to three days, causing her to fall, but she did not report this to her doctor nor did she use a cane. Plaintiff testified that on a typical day, she would spend most of the time on the couch. Her husband did the shopping and most of the housework and cooking. Her medications

made her drowsy and she had to lie down at least twice a day for 30 minutes to two hours.

The VE testified that Plaintiff's past work was classified variously as light, medium, and semi-skilled. The ALJ asked the VE to assume a person of Plaintiff's age, education, and work experience, who could do sedentary work,[3] but would require a sit/stand option and would not be able to stand for more than 15 to 20 minutes at a time. The VE testified that no jobs would be available to such an individual.

**Post-hearing Evidence – Dr. Kim's Opinion**

On January 8, 2014, following a consultative examination of Plaintiff, Dr. Kim prepared a narrative report and a check-box Medical Source Statement ("MSS") of Plaintiff's physical ability to do work-related activities. In the report, Dr. Kim stated that Plaintiff still had a prominent bone at her left shoulder, and had persistent pain across the lower back radiating to her left leg that caused weakness and falls. Dr. Kim also stated that Plaintiff had left shoulder and left neck pain. On examination, Plaintiff's left shoulder had a mild degree of limited range of motion, with pain. Bilateral flexion of the lumbar spine to 20 degrees caused lower back pain, and Plaintiff had difficulty standing up from sitting. Plaintiff's pain medications included Tramadol (used to treat moderate to severe pain) three times a day, Percocet (a narcotic used to treat severe pain) every six

---

[3] Sedentary work involves sitting for a total of six hours, and standing and walking for a total of two hours in an eight-hour workday, lifting no more than 10 pounds at a time and occasionally lifting or carrying lighter articles. The sitting requirement allows for normal breaks, including lunch, at two hour intervals. The need to alternate between sitting and standing more frequently than every two hours would erode the occupational base for a full range of sedentary work. 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 85–15, 1985 WL 56857; and SSR 96–9p, 1996 WL 374185.

hours as needed, and Gabapentin three times a day. (Tr. 381-85.)

On the MSS, Dr. Kim indicated that Plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently, and never more than 20 pounds; carry up to 10 pounds occasionally and never carry more than 10 pounds; without interruption, sit for 30 minutes, stand for 20 minutes, and walk for 15 minutes; in an eight-hour workday, sit for a total of three hours, stand for a total of 30 minutes, and walk for a total of 30 minutes (and lying down for the remainder of the eight-hour workday); occasionally reach overhead, handle, finger, feel, push/pull, and operate foot pedals; frequently reach other than overhead; never climb ladders or scaffolds, crouch or kneel; and occasionally climb stairs and ramps, balance, and stoop. Dr. Kim opined that these limitations had lasted or would last for 12 consecutive months. (Tr. 386-93.)

**ALJ's Decision of March 13, 2014 (Tr. 10-19)**

The ALJ found that Plaintiff suffered from the "severe impairment"[4] of degenerative disc disease of the lumbar spine with status post fusion. The ALJ found that Plaintiff's "remote history" of bilateral carpal tunnel syndrome and left shoulder pain were not severe as they were effectively treated by post-surgical pain management, and Plaintiff did not seek other significant treatment for either.

The ALJ determined that no impairment or combination of impairments met or equaled the severity of one of the deemed-disabling impairments listed in the

---

4  A "severe impairment" is defined in the regulations as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

7

Commissioner's regulations, and that while Plaintiff could not perform her past relevant work, she retained the RFC to perform the full range of sedentary work. The ALJ found that Plaintiff's allegations to the contrary were not credible, despite her good work history prior to the alleged onset date. Citing to Plaintiff's June 1, 2012 Function Report, the ALJ stated that Plaintiff's daily activities were inconsistent with her allegations of disabling limitations, as she was able "to essentially live and function independently, provide care for her child and pet, prepare meals, and perform light household work." The ALJ also pointed to Plaintiff's "minimal or conservative treatment" for her low back pain, and stated that there was no evidence that Plaintiff's prescribed medications were not generally effective. He noted that physical examinations revealed that Plaintiff had a normal gait and was able to ambulate independently, and the absence of muscle atrophy, spasms, or weakness.

The ALJ assigned "little weight" to Dr. Kim's opinion, finding that it was not consistent with the objective medical evidence, Plaintiff's history of "conservative treatment," the absence of neuromuscular abnormalities on physical examination, and the lumbar spine MRI. Further, the ALJ stated that Dr. Kim's opinion seemed to be based primarily on Plaintiff's subjective complaints, rather than on independent medical findings. Applying the Guidelines (Rule 201.28 – younger individual, high school education, semiskilled/skills not transferable), the ALJ found that Plaintiff was not disabled.

**Arguments of the Parties**

Plaintiff argues that that the ALJ erred by failing to give proper weight to Dr. Kim's opinion, which was the only medical opinion of record that directly addressed Plaintiff's ability to perform work-related tasks. Plaintiff contends that Dr. Kim's opinion was not at odds with any treating source—because no treating source offered an opinion on Plaintiff's abilities to perform in the workplace. Plaintiff further argues that the record as a whole did not support the ALJ's finding that Plaintiff could perform a full range of sedentary work, and that the ALJ erred in failing to include a sit/stand option in the RFC, as well as limitations based on Plaintiff's carpal tunnel syndrome and shoulder injury.

Defendant responds that the ALJ properly assessed that Plaintiff's carpal tunnel and left shoulder conditions were not severe, as the record indicated that these conditions were effectively treated by post-surgical pain management, and required no significant additional treatment. Defendant argues that the ALJ gave valid reasons for finding that Plaintiff was not fully credible,[5] and that the RFC determination is supported by the record. Defendant maintains that the ALJ did not err in assigning Dr. Kim's opinion little weight because Dr. Kim conducted only a single examination of Plaintiff. Because the ALJ properly discounted Dr. Kim's opinion of significant non-exertional limitations, the ALJ was justified, according to Defendant, in relying on the Guidelines to determine that Plaintiff was not disabled.

---

5 Defendant also notes Plaintiff's failure to comply with medical instructions to stop smoking, but the ALJ did not mention this fact, nor would this fact be relevant to the issues in the case.

9

# DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is

engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, ___ F.3d, ___, 2016 WL 3878219, at *3 (8th Cir. 2016).

If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When nonexertional limitations such as pain do not significantly affect a claimant's ability to perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ may carry this burden by referring to the Medical-Vocational Guidelines; when a claimant cannot perform the full range of work in a particular category due to nonexertional

11

impairments, the ALJ must produce testimony by a VE or other similar evidence to meet the step five burden. *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**<u>Weight Afforded to Dr. Kim's Opinion and ALJ's RFC Assessment</u>**

The Commissioner's regulations provide that generally more weight is to be given to a treating physician, and to an examining source than a non-examining source. 20 C.F.R. § 404.1527(d)(1). Dr. Kim was not Plaintiff's treating physician but he did examine Plaintiff. The reasons given by the ALJ for discounting Dr. Kim's opinion with regard to Plaintiff's physical limitations are not persuasive. The Court sees no basis to believe that Dr. Kim did not base his opinions on the physical examination he conducted. Furthermore, it can hardly be said that treatment for Plaintiff's lower back pain has been "conservative" since her lumbar surgeries, as the record shows she was administered numerous epidural injections. And the pain medications that have been prescribed continually were quite strong. Throughout the period after her lumbar surgeries, no medical source suggested that Plaintiff was exaggerating her pain or malingering.

Furthermore, the ALJ's reliance on Plaintiff's daily activities as a basis for discrediting her allegations is problematic. Nowhere in the record does it say that Plaintiff cooked regularly or even that she lived independently without her husband's help. The Court also agrees with Plaintiff that the RFC assessment is not based on sufficient medical evidence. Although, as noted above, there is no requirement that an RFC assessment be supported by a specific medical opinion, *Hensley*, 2016 WL 3878219, at *3,

here aside from the medical record showing periodically that Plaintiff had a normal gait, there is scant medical evidence that Plaintiff can perform the full range of sedentary work.

In light of these issues with the ALJ's opinion, coupled with the VE's testimony at the hearing that an individual with Plaintiff's profile who required a sit/stand option to do sedentary work would not be employable, this case comes close to being one in which a remand with directions to award Plaintiff benefits would be appropriate. However, the Court will take the more cautious approach of remanding the case for further proceedings. *See, e.g., Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (explaining that ordinarily, when a reviewing court concludes that a denial of disability benefits was improper, the court, out of "abundant deference to the ALJ," should remand the case for further administrative proceedings; remand with instruction to award benefits is appropriate "only if the record overwhelmingly supports such a finding"). On remand, the ALJ shall reconsider Dr. Kim's opinion and/or obtain the opinion of a consulting medical source on Plaintiff's ability to do work related activities, and if necessary, obtain the testimony of a VE on jobs that might be available for an individual like Plaintiff, based on a new RFC assessment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2016.